UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11858-RWZ

ALICE D. ROE,
through her parent A.L., *et al.,* on their own behalf
and on behalf of all other similarly situated,

v.

DR. CAROL JOHNSON,
in her capacity as Superintendent of Boston Public Schools, *et al.*

<u>ORDER</u>

August 17, 2012

ZOBEL, D.J.

Plaintiff Alice D. Roe,[1] through her parent A.L., brings this action on her behalf and that of others similarly situated, seeking a declaratory judgment and injunctive relief against the Boston Public Schools ("BPS")[2] for alleged violation of BPS' duty to provide a "free appropriate public education" ("FAPE") to children with disabilities when they turn three years old, as required by the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 <u>et</u> <u>seq.</u> The Second Amended Complaint ("Complaint")

---

[1] "Zachary A. Doe" or "Z.A.," one of the two named plaintiffs to the original complaint, was replaced in the Second Amended Complaint by named plaintiff "Samuel Snow" or "S.S." Snow's claims were voluntarily dismissed without prejudice on June 22, 2012. Nicholas Bow, through his parent S.J., has moved to intervene as a named plaintiff, subject to the court's decision on defendants' pending motion to dismiss.

[2] Named defendants are Dr. Carol Johnson, in her capacity as Superintendent of the Boston Public Schools, and appointed members of the Boston School Committee: Rev. Gregory G. Groover, Sr., Marchelle Raynor, John F. Barros, Alfreda J. Harris, Claudio Martinez, Michael D. O'Neill, and Mary Tamer, all in their official capacities.

is in three counts: violation of 42 U.S.C. § 1983 for "deliberate indifference" of plaintiff's rights under the IDEA (Count I); violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), for discrimination on the basis of disability (Count II); and violation of Mass. Gen. Laws ch. 71B and implementing regulations (Count III).

Defendants move to dismiss all claims (Docket # 10) for failure to exhaust administrative remedies as required by the IDEA. Also pending are plaintiff's motion for class certification (Docket # 14), and Nicholas Bow's motion to intervene as a named plaintiff (Docket # 19). As explained below, defendants' motion is allowed, and the remaining motions are denied as moot.

## I.   Background

The Complaint refers to plaintiff and others similarly situated as "Part C Preschoolers," children who, as infants and toddlers, received early intervention services under Part C of the IDEA, see 20 U.S.C. §§ 1431, 1433, 1435, and who, upon turning three years old, were eligible to receive FAPE, provided by the BPS, under Part B of the statute. See 20 U.S.C. §§ 1400(d)(1)(A) and 1412(a)(1)(A); Mass. Gen. Laws ch. 71B. Plaintiff alleges that BPS delayed her transition (and that of the proposed class[3]) from Part C to Part B services to her detriment and in violation of federal and state law. Specifically, plaintiff alleges that BPS failed (and continues to fail) to: (1) timely conduct an "initial evaluation" of Part C Preschoolers; (2) convene an

---

[3] "The proposed class consists of all children who have received special education or related services under Part C of the IDEA within two years of the filing of the original Complaint . . ., who live in the City of Boston, and (a) whom BPS had not evaluated in accordance with federal and state law, (b) for whom BPS had not developed an IEP in accordance with federal and state law, or (c) to whom BPS had not provided a placement or implemented the child's IEP in accordance with federal and state law by the time the child reached three years old." Compl. ¶ 62.

2

"individualized education program" ("IEP") team meeting and/or develop an IEP for each eligible child within 30 days of receiving a parent's consent to evaluate; and (3) determine placement and/or provide appropriate services for each eligible child within 45 days after receiving a parent's consent to evaluate. See Compl. ¶¶ 6-16, 65-69, 78-84.

These aforementioned delays and associated harms are allegedly the result of "at least three system-wide policy decisions" by BPS: (1) its refusal to use its Special Education Information Management System and other data "to make continuing projections of enrollments of incoming Part C Preschoolers," Compl. ¶ 55; (2) its failure to alleviate a shortage of seats, classrooms, and service providers for Part C Preschoolers, Compl. ¶¶ 56-57; and (3) its refusal "to contract with providers of Part C services to continue early-intervention services for Part C Preschoolers while they wait for BPS to implement their IEPs." Compl. ¶ 61. See also Pl. Opp. to Def. Mot. to Dismiss ("Pl. Opp.") at 9.

The IDEA requires state educational agencies to establish procedures to ensure that children with disabilities and their parents are provided impartial due process hearings with respect to the provision of FAPE. 20 U.S.C. § 1415(a), (f). In Massachusetts, the Bureau of Special Education Appeals ("BSEA") has primary jurisdiction over disputes "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [FAPE] to such child." 20 U.S.C. § 1415(b)(6); 34 C.F.R. §§ 300.507-300.508; Mass. Gen. Laws ch. 71B, § 2A; 603 Mass. Code Regs. § 28.08. See also Rose v. Yeaw, 214 F.3d 206, 210

(1st Cir. 2000) (describing scope of administrative hearing as "broad"). A parent aggrieved by a BSEA decision may file a civil suit only after exhausting all administrative remedies. 20 U.S.C. § 1415(l). See also City of Boston v. Bureau of Special Educ. Appeals, 2008 WL 2066989, at *2–3 (D. Mass. Apr. 30, 2008) (discussing exhaustion requirement). Exhaustion is not required, however, "if [a plaintiff] can show . . . that the administrative remedies afforded by the process are inadequate given the relief sought." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 59 (1st Cir. 2002) (quoting Yeaw, 214 F.3d at 210-11, and citing Honig v. Doe, 484 U.S. 305, 327 (1988) (holding, under predecessor statute, that "parents may bypass the administrative process where exhaustion would be futile or inadequate")). "Nevertheless, the IDEA's exhaustion requirement remains the general rule, and a party who seeks to invoke an exemption bears the burden of showing that it applies." Id. (citing Honig, 484 U.S. at 326-27).

The exhaustion requirement applies to all of plaintiff's claims. See Frazier, 276 F.3d at 64 (exhaustion required for IDEA-based claim under 42 U.S.C. § 1983); Weber v. Cranston Sch. Comm., 212 F.3d 41, 51-52 (1st Cir. 2000) (same for claim brought under section 504 of Rehabilitation Act); Mass. Gen. Laws ch. 71B and 603 Mass. Code Regs. § 28.08 (inter alia, implementing IDEA provisions, including exhaustion requirement). Plaintiff admits that she has not exhausted her administrative remedies under the IDEA, but contends that she need not do so because the BSEA lacks jurisdiction to provide the systemic, class-wide relief which she seeks, any individual relief it can provide would come at the expense of other Part C Preschoolers, and the

4

Complaint raises only questions of law regarding BPS's policies and practices and not questions pertaining to the circumstances of a particular child.

**II.     Analysis[4]**

Frazier held that a plaintiff who sought only money damages for a section 1983 claim predicated on the IDEA was required to exhaust her administrative remedies, even though the IDEA did not provide for monetary damages. 276 F.3d at 64.  The court reasoned that "special benefits adhere to the exhaustion requirement in the IDEA context"; namely, placing problem-solving in the hands of education professionals, and allowing such professionals to develop a detailed evidentiary record upon which a reviewing court may rely.  Id. at 60-61. See also  20 U.S.C. § 1415(i)(2)(c) (in a judicial action brought under the IDEA, the court "shall receive the records of the administrative proceedings").  The Frazier court found these benefits compelling enough to justify exhaustion, even when the administrative process does not offer the specific relief sought by the plaintiff:

> The plaintiffs concede these benefits - but they say that their value evaporates where, as here, a claimant seeks a remedy that the administrative machinery cannot provide. We do not agree. Exhaustion is beneficial regardless of whether the administrative process offers the specific form of remediation sought by a particular plaintiff. After all, the administrative process facilitates the compilation of a fully developed record by a factfinder versed in the educational needs of disabled children - and that record is an invaluable resource for a state or federal court required to adjudicate a subsequent civil action covering the same terrain. Fidelity to the

---

[4] I consider a motion to dismiss for failure to exhaust administrative remedies under the IDEA as a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1).  See Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1093-95, 1099 (1st Cir. 1989) (affirming district court decision dismissing case for lack of jurisdiction because student failed to exhaust administrative remedies under the Education of the Handicapped Act (predecessor statute to the IDEA)).

5

IDEA's exhaustion requirement ensures such an outcome.
276 F.3d at 61.

Plaintiff argues that <u>Frazier</u> applies only to individual claims for relief and should not be extended to require exhaustion where a plaintiff seeks class-wide claims for injunctive relief, over which, she argues, the BSEA lacks jurisdiction. Even if the BSEA lacks jurisdiction to grant systemic relief, however, it nevertheless may evaluate a parent's claim that systemic practices or procedures contributed to denying a student FAPE. See <u>In re: Boston Pub. Schs.</u>, 17 Mass. Spec. Ed. Rep. 69 at * 7, 18 (BSEA 11-4676) (2011) (hearing officer found that he lacked authority to order systemic relief, but had authority over "[p]arents' claims that Boston has certain systemic policies or practices" – in this case, "systemic failures to provide required notices and translations to families of special-education students whose primary language of the home is not English" – "and that these policies or practices caused or contributed to student's being denied FAPE"). The BSEA may also determine whether the BPS has violated a student's rights under the IDEA, a finding which is entitled to significant deference by a reviewing court. See <u>Frazier</u>, 276 F.3d at 64 and n.5 (noting that <u>In re: Brockton Pub. Schs.</u>, 6 Mass. Spec. Ed. Rep. 17 (BSEA 00-2572) (2000), "stands for the proposition that a BSEA administrative hearing officer has the power to enter a finding that a school system violated a student's rights," and that "[u]nder ordinary circumstances, a trial court would have to accord considerable respect to such a finding").

Furthermore, the questions raised by the Complaint are not purely issues of law. Rather, plaintiff's claims hinge on whether the BPS has, in fact, adopted the systemic

practices and policies which plaintiff alleges are at the root of the harm -- a claim which, unsurprisingly, BPS rejects, contending that decisions were based on the individual circumstances of each child.  Thus, BSEA consideration of plaintiff's claims would develop a factual record on the issues of whether the alleged systemic policies or practices in fact exist, and, if so, whether such policies contributed to or caused denial of plaintiff's right to FAPE.[5]  Any such findings could only sharpen the issues and assist a reviewing court in evaluating class-wide claims and fashioning a class-wide remedy, should the case progress to that point. See Frazier, 276 F.3d at 62-63 ("[T]he administrative process, at the very least, should facilitate the development of a useful record (and, thus, assist in the informed disposition of any subsequent litigation).  Seen in that light, exhaustion of the enumerated administrative procedures is useful even though the procedures cannot yield the particular redress that the claimant prefers.  It follows inexorably that, in such circumstances, exhaustion should not be exhausted on the ground of futility.").

While exhaustion may not provide the relief plaintiff requests, it furthers the purposes of the "carefully calibrated" administrative scheme developed by Congress, id. at 61, and is required here.

### III. Conclusion

Defendants' Motion to Dismiss (Docket # 10) is ALLOWED.  Plaintiffs' Motion to

---

[5] Likewise, plaintiff's argument that by requiring exhaustion, the court is essentially "rob[bing] Peter to pay Paul" assumes the veracity of her argument that BPS has adopted an "illegal waitlisting" policy, Pl. Opp. at 15, an issue that should be evaluated first by the BSEA after an administrative hearing.

7

Certify Class (Docket # 14) and Nicholas Bow's Motion to Intervene (Docket # 19) are

DENIED AS MOOT.

|  |  |
|---|---|
|     August 17, 2012     <br> DATE |     /s/Rya W. Zobel     <br> RYA W. ZOBEL <br> UNITED STATES DISTRICT JUDGE |